IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| **GIZELLA H. PITNER and STANLEY R. PITNER** | : | |
| Plaintiffs, | : | |
| | : | **CIVIL ACTION** |
| v. | : | **NO. 07-355** |
| | : | |
| **SEAN MURRIN, CHRISTOPHER MCEVOY, WILLIAM CAHILL, and JAMES D. SHAW,** | : | |
| Defendants. | : | |
| | : | |

## ORDER

**AND NOW**, this 23rd day of June, 2008, upon consideration of Plaintiffs' Motion for Summary Judgment (Document No. 9, filed July 11, 2007); Defendants' Response to Plaintiffs' Motion for Summary Judgment (Document No. 11, filed July 18, 2007); Plaintiffs' Reply to Defendants' Response to Plaintiffs' Motion for Summary Judgment (Document No. 14, filed August 9, 2007); Defendants' Motion for Summary Judgment (Document No. 17, filed November 1, 2007); and Plaintiffs' Reply to Defendants' Motion for Summary Judgment (Document No. 20, filed December 5, 2007), for the reasons set forth in the attached Memorandum, **IT IS ORDERED** as follows:

1. Plaintiffs Gizella H. Pitner and Stanley R. Pitner's Motion for Summary Judgment is **DENIED**;

2. Defendants Sean Murrin, Christopher McEvoy, William Cahill, and James D. Shaw's Motion for Summary Judgment is **GRANTED**; and

3. **JUDGMENT IS ENTERED** in **FAVOR** of defendants Sean Murrin, Christopher

McEvoy, William Cahill, and James D. Shaw, and **AGAINST** plaintiffs Gizella H. Pitner and Stanley R. Pitner.

## MEMORANDUM

I. BACKGROUND

    A.    **Factual Background**

Plaintiffs Stanley and Gizella Pitner assert a violation of the Fourth Amendment under 42 U.S.C. § 1983. Defendants are law enforcement officers Sean Murrin, Christopher McEvoy, William Cahill, and James Shaw. At all times relevant to this matter, defendants Murrin and McEvoy were employed by the Coatesville Police Department and the Chester County Municipal Drug Task Force. Defendants Cahill and Shaw were employed at all such times by the Westtown-East Goshen Police Department. (Am. Compl. ¶¶ 3-6.)

On February 3, 2005, defendants obtained a search warrant for plaintiffs' residence at 127 Culbertson Run Road. (See Ex. 2 to Pls.' Mot. for Summ. J.) Defendants sought and obtained the search warrant following an undercover drug investigation of which plaintiffs' son, Nathan Pitner, was a subject. (Aff. Probable Cause ¶¶ 4-7.) Defendants Murrin and Cahill are identified as affiants in the application for the search warrant. (Aff. Probable Cause ¶¶ 1-2.) Defendant Cahill typed the affidavit as defendant Murrin looked on, but only defendant Murrin swore to and signed the affidavit in front of the magistrate judge. (Dep. of Def. Murrin 7-8, 14; Tr. 10/11/05 of Suppression Hrg. in Chester Co. Ct. of Common Pleas 86.) Neither defendant McEvoy nor defendant Shaw participated in the drafting of the affidavit, but defendant McEvoy was present while the affidavit was being drafted. (Dep. of Def. Murrin 16-17; Tr. 10/11/05 of Suppression Hrg. in Chester Co. Ct. of Common Pleas 13.) The affidavit states as follows:

On January 24, 2005, defendant Murrin bought marijuana from Derek Huskins in an apartment in the Meadow Lake Apartments in Downingtown, Pennsylvania. Huskins had previously told defendant Murrin that he would arrive with "Nate," his supplier. An individual identified as Nathan Pitner drove Huskins to the apartment in a white work van. ( Id. ¶ 4.)

On January 26, 2005, members of the Chester County Municipal Drug Task Force arranged to purchase an additional four ounces of marijuana from Derek Huskins. Because Huskins had informed defendant Murrin that his "manufacturer" or supplier wanted the money for the transaction up front, defendant Murrin gave Huskins $960.00 in prerecorded United States currency. (Id. ¶ 5.) Huskins told defendant Murrin that he could wait for the marijuana in the parking lot of the Giant Supermarket located at 3477 East Lincoln Highway in Thorndale, Pennsylvania, while Huskins went across the street to the parking lot of the Wendy's restaurant at 3480 East Lincoln Highway to wait for his supplier to arrive with the marijuana. (Id.) Officers, including defendants Cahill and McEvoy, then observed Nathan Pitner arrive at the Wendy's parking lot in a red Ford Bronco. (Id. ¶ 5; Tr. 10/11/05 of Suppression Hrg. in Chester Co. Ct. of Common Pleas 72.) A check of the vehicle's registration via PENNDOT revealed that the car was registered to Nathan Pitner at plaintiffs' address. (Aff. Probable Cause ¶ 5.) Derek Huskins entered Pitner's vehicle and the two men left the parking lot. Five minutes later, the red Ford Bronco returned to the Wendy's parking lot and Huskins exited the vehicle. Huskins then returned to his own vehicle, drove back to the Giant Supermarket parking lot, and delivered four ounces of marijuana to defendant Murrin. (Id.)

At 11:30 p.m. on February 2, 2005, defendant Cahill observed the same red Ford Bronco driven by Nathan Pitner to his January 26, 2005 meeting with Derek Huskins parked in plaintiffs' driveway. (Id. ¶ 6.) On February 3, 2005, defendant Cahill drove past 127 Culbertson Run Road and observed that the red Ford Bronco was not parked in plaintiffs' driveway, which was "consistent with information from Derek Huskins that his 'manufacturer' . . . worked from 0600 hrs. to 1600 hrs." (Id. ¶ 7.) The affidavit did not allege that Nathan Pitner lived at plaintiffs' home or was ever seen at plaintiffs' home, or that any drug transactions took place at plaintiffs' home.

The affidavit also listed three pages of, *inter alia*, "common" items drug traffickers keep in their residences. (Id. ¶ 3.) The affidavit sought authorization for law enforcement agents to search for, *inter alia*, documents related to the distribution of marijuana and United States currency. (Id. 1-2.)

Upon completion, the search warrant application was submitted to and approved by Deputy District Attorney Steve Kelly (Id. 1; Dep. of Def. Sean Murrin 11.) Defendant Murrin then presented the search warrant application to Magistrate Judge Daniel Maisano. (Dep. of Def. Sean Murrin 14.) Aside from the affidavit, "[d]efendants do not recall if anything was said to the magistrate to establish probable cause." (Defs.' Answers to Pls.' Interrogs. ¶ 4.) Magistrate Judge Maisano issued the search warrant at 9 p.m. on February 3, 2005. (Aff. Probable Cause 1.)

After obtaining the magistrate judge's approval, defendants executed the search warrant that same evening, February 3, 2005. (Am. Compl. ¶ 10; Decl. of Def. William Cahill ¶ 5.) All four defendants participated in the search. (Dep. of Def. Murrin 24; Dep. of Def. James Shaw 6-9.) Prior to the search, defendant Shaw, the only defendant not present during the drafting of the

4


affidavit of probable cause, read the affidavit. (Dep. of Def. Shaw 9-10.) Pursuant to the warrant, defendants searched plaintiffs' entire house, including their bedroom. (Am. Compl. ¶ 25.) In addition to documents and U.S. currency, firearms and marijuana were found during the search, and plaintiffs were arrested on criminal charges, including possession of a controlled substance. (Receipt / Inventory of Seized Property, in Ex. 2 to Pls.' Mot. for Summ. J.; Am. Compl. ¶ 41.)

On October 3, 2005, the Honorable James P. MacElree, II, of the Chester County Court of Common Pleas, granted plaintiffs' Motion to Suppress evidence obtained during the search for lack of probable cause, lack of nexus and staleness. (Am. Compl. ¶ 44; Ex. 1 in Pls.' Second Supplement to Exs. to Pls.' Mot. for Summ. J.) On November 3, 2005, Judge MacElree ordered a *nolle prosequi* and all charges against plaintiffs were dismissed. (Am. Compl. ¶ 45.)

B.      **Procedural History**

On January 29, 2007, plaintiffs filed suit against defendants in federal court. On February 23, 2007, plaintiffs filed an Amended Complaint. In the Amended Complaint, plaintiffs allege that defendants violated their Fourth Amendment rights by conducting an illegal search of their residence. (Am. Compl. 16.) Specifically, plaintiffs assert that "the search of the premises was without probable cause," because "[t]here was no accumulation of circumstantial evidence that together indicated a fair probability of the presence of contraband or evidence of criminal activity on the premises," there was "no reasonable nexus between criminal activities which allegedly supported probable cause and the location to be searched," and "no statement in the warrant connected the premises to any illegal activity." (Id. ¶ 49-52.) Plaintiffs also assert that the "search exceeded the scope of the warrant." (Id. ¶ 53.)

      The parties filed cross motions for summary judgment.  At issue in the cross motions is (1) whether defendants had probable cause to search plaintiffs' home, and specifically whether there was a sufficient nexus between criminal activity and plaintiffs' residence presented in the affidavit to support a finding of probable cause to search; (2) whether the search conducted by defendants exceeded the scope of the search warrant in violation of the Fourth Amendment; and (3) whether defendants are entitled to qualified immunity in the event of a constitutional violation.

## II.    STANDARD OF REVIEW

A court should grant summary judgment if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A "genuine" issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is "material" when it "might affect the outcome of the suit under the governing law."  Id.  In considering a motion for summary judgment, the "facts must be viewed in the light most favorable to the party opposing summary judgment."  Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990).  The party opposing the motion, however, cannot "rely merely upon bare assertions, conclusory allegations, or suspicions" to support its claim.  Fireman's Ins. Co. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982).

### III.   APPLICABLE LAW

####    A.   Collateral Estoppel

As a preliminary matter, the Court notes that the decision of the Chester County Court of Common Pleas suppressing the evidence seized from plaintiffs' residence does not collaterally estop defendants from arguing that the search was lawful under the Fourth Amendment. "Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude re-litigation of the issue in a suit on a different cause of action involving a party to the first case." Allen v. McCurry, 449 U.S. 90, 94 (1980). "The test under federal law for when an issue is precluded because it has been litigated already requires the presence of four factors: '(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from re-litigating the issue was fully represented in the prior action.'" Broadus v. Sturm, 2004 WL 1490335, at *4 (E.D. Pa. July 2, 2004) (citing Dam Things From Denmark v. Russ Berrie & Co., 290 F.3d 548, 559 n.15 (3d Cir. 2002) (internal citations omitted)); see also Maiale v. Youse, 2004 WL 1925004, at *4 (E.D. Pa. Aug. 27, 2004). Because the defendant law enforcement officers were not parties to the state court proceedings, nor were their interests "fully represented" by the prosecutor, defendants are not collaterally estopped from arguing that the search of plaintiffs' home was lawful under the Fourth Amendment.

####    B.   Qualified Immunity

The principles governing claims of qualified immunity are well-established. "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate

clearly established statutory or constitutional rights of which a reasonable person would have known.'" Beers-Capitol v. Whetzel, 256 F.3d 120, 142 n.15 (3d Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

"A court evaluating a claim of qualified immunity 'must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation.'" Wilson v. Layne, 526 U.S. 603, 609 (1999) (quoting Conn v. Gabbert, 526 U.S. 286, 290 (1999)); see also Saucier v. Katz, 533 U.S. 194, 201-02 (2001) (further explicating two-step inquiry); Curley v. Klem, 499 F.3d 199, 206-07 (3d Cir. 2007). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202. "The Supreme Court has generously construed qualified immunity protection to shield 'all but the plainly incompetent or those who knowingly violate the law.'" Davis v. Hall, 375 F.3d 703, 711-12 (8th Cir. 2004) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)); Curley, 499 F.3d at 206; cf. Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992) ("Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.").

## IV.   DISCUSSION

### A.   Probable Cause to Search

#### 1.   Constitutional Violation

Probable cause is determined based on the "totality of the circumstances," taking into consideration the "factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Illinois v. Gates, 462 U.S. 213, 230-31 (1983) (internal

citation omitted). "Probable cause can be, and often is, inferred by 'considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide stolen property.'" United States v. Jones, 994 F.2d 1051, 1056 (3d Cir. 1993) (citing United States v. Jackson, 756 F.2d 703, 705 (9th Cir. 1985)).

As the Supreme Court explained in Gates, the magistrate judge and reviewing court have clearly defined duties with respect to the determination of probable cause:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed.

462 U.S. at 238-39 (citing Jones v. United States, 362 U.S. 257, 271 (1960)). As explained by the Third Circuit in United States v. Jones, "such deference does not mean that reviewing courts should simply rubber stamp a magistrate's conclusions. But it does mean that the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." 994 F.2d at 1055 (internal citations omitted).

In their Motion for Summary Judgment, plaintiffs argue that the search warrant affidavit failed to establish a nexus between Nathan Pitner's drug activity and plaintiffs' residence, and thus did not provide a sufficient basis for probable cause to search the home. (Pls.' Mot. for Summ. J. 28-34.) The connections between Nathan Pitner's drug activity and plaintiff's residence identified in the affidavit center upon Nathan Pitner's automobile, a red Ford Bronco. The affidavit recites that on January 26, 2005, officers observed Nathan Pitner meet with Derek Huskins in a parking lot prior to Huskins engaging in a drug deal with defendant Murrin. (Aff.

9

Probable Cause ¶ 5.)  Nathan Pitner drove a red Ford Bronco to the meeting, and a check of the vehicle's registration via PENNDOT revealed that the car was registered to Nathan Pitner at plaintiffs' address.  (Id.)  The affidavit also details defendant Cahill's surveillance of plaintiffs' home to further connect the red Ford Bronco to that location.  As stated in the affidavit, at 11:30 p.m. on February 2, 2005, defendant Cahill observed the same red Ford Bronco that Nathan Pitner drove to the meeting with Huskins parked in plaintiffs' driveway.  (Id. ¶ 6.)  On February 3, 2005, defendant Cahill again drove past 127 Culbertson Run Road.  "[C]onsistent with information from Derek Huskins that his 'manufacturer' . . . worked from 0600 hrs. to 1600 hrs," defendant Cahill observed that the red Ford Bronco was not parked in plaintiffs' driveway on this occasion.  (Id. ¶ 7.)

The question of whether the magistrate judge had a "substantial basis" for concluding that probable cause to search existed on the basis of this affidavit is a close call.  The Third Circuit, "and several other courts of appeals, 'have held that evidence [of involvement in the drug trade] is likely to be found where the [drug] dealers reside.'"  United States v. Burton, 288 F.3d 91, 103 (3d Cir. 2002) (quoting United States v. Whitner, 219 F.3d 289, 297-98 (3d Cir. 2000) (listing cases)).  As explained by the Third Circuit in Burton:

> The rationale underlying the foregoing line of cases is that evidence associated with drug dealing needs to be stored somewhere, and that a dealer will have the opportunity to conceal it in his home.  After all, a dealer logically could conclude that his residence is the best, and probably the only, location to store items such as records of illicit activity, phone books, address books, large amounts of cash, assets purchased with proceeds of drug transactions, guns to protect drugs and cash, and large quantities of drugs to be sold.

219 F.3d at 298.

In this case, it was reasonable for the magistrate to infer from the affidavit that Nathan Pitner was involved in the drug trade.  Derek Huskins identified Nathan Pitner as his "supplier"

10

and, on January 24, 2005, provided defendant Murrin with 28 grams of marijuana after arriving at the meeting location with Nathan Pitner. (Aff. Probable Cause ¶ 4.) On January 26, 2005, Huskins again met with Nathan Pitner, then delivered 4 ounces of marijuana to defendant Murrin. (Id. ¶ 5.) "Viewed in a common sense manner, these facts and the inferences to be drawn from them reasonably could lead a magistrate judge to conclude that [Nathan Pitner] was involved in the drug trade." Whitner, 219 F.3d at 298.

The closer question is whether the affidavit provides a substantial basis for finding that plaintiffs' home was Nathan Pitner's residence. The evidence of residence included in the affidavit was (1) a check of the registration for the red Ford Bronco Nathan Pitner drove to his January 26, 2005 meeting with Derek Huskins revealed that the car was registered to Nathan Pitner at plaintiffs' address; (2) on February 2, 2005, at 11:30 p.m., defendant Cahill observed the same red Ford Bronco that Nathan Pitner drove to the meeting with Huskins parked in plaintiffs' driveway; and (3) on February 3, 2005, defendant Cahill again drove past 127 Culbertson Run Road, and "consistent with information from Derek Huskins that his 'manufacturer' . . . worked from 0600 hrs. to 1600 hrs," he observed that the red Ford Bronco was not parked in plaintiffs' driveway on this occasion. (Aff. Probable Cause ¶ 7.)

It would have been preferable had more evidence connecting Nathan Pitner to plaintiffs' home been provided to the magistrate judge. Nevertheless, it was not unreasonable for the magistrate judge to conclude from the information provided that Nathan Pitner resided in plaintiffs' home.

In United States v. Jones, 994 F.2d 1051, 1054, 1056 (3d Cir. 1993), the Third Circuit accepted without question that three homes on Clifton Hill were the residences of three

defendants. The evidence of residence in the search warrant affidavit consisted of the statements of two "concerned citizens" identifying the residences as the defendants' homes and the fact that three brand new motorcycles parked outside one of the residences were registered to the three defendants. Id. In Burton, the Third Circuit found that "[a]mple evidence existed that 2543 North Garnet Street was Burton's residence" where the affidavit noted that (1) the defendant initially stated that he resided at 2543 North Garnet Street, but later retracted that statement, (2) an individual in the residence stated that the defendant lived there, and (3) the defendant's car was parked near the residence. 288 F.3d at 95, 104. The Court stated that "the best evidence that the North Garnet Street property was Burton's was that he parked his Maxima in close proximity to the house." Id. at 104. There was no evidence in that case that the Maxima was registered to Burton and/or 2543 North Garnet Street. Id. at 95.

In the case before the Court, as in Burton, the car used in conjunction with drug activity was found parked outside the residence named in the warrant. As in Jones, the vehicle was registered to the suspect at the target residence. Under these facts and in light of the precedents of Jones and Burton, the Court concludes that it was reasonable for the magistrate judge to infer that plaintiffs' home was Nathan Pitner's residence.

Because the Third Circuit "generally accept[s] the common sense proposition that drug dealers often keep evidence of their transactions at home," the magistrate could reasonably conclude on the basis of the above information that there was a "fair probability that contraband or evidence of a crime" would be found in plaintiffs' residence. Burton, 288 F.3d 104 (citing Whitner, 219 F.3d at 297-98); Gates, 462 U.S. at 238. Additionally, the affidavit included the experience of defendants Murrin and Cahill, a four- and seven-year veteran of the Chester

County Municipal Drug Task Force, respectively, that "[t]hose involved in illegal trafficking of controlled substances" often maintain proceeds and documentation of trafficking in their homes (Aff. Probable Cause 1-2), and the magistrate was entitled to rely upon the officers' experience in making his probable cause determination.  See Burton, 288 F.3d at 105.

As explained by the Third Circuit in Jones, the deference that reviewing courts are to give a magistrate's determination of probable cause to search "does not mean that reviewing courts should simply rubber stamp a magistrate's conclusions.  But it does mean that the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." 994 F.2d at 1055 (internal citations omitted).  Thus, in this marginal case, the Court accords preference to the warrant and concludes that the magistrate judge had a substantial basis for concluding that the affidavit was supported by probable cause.

### 2. Objective Reasonableness

It is beyond dispute that there is a clearly established right to be free from unreasonable searches and seizures under the Fourth Amendment.  See, e.g., Campbell-Bieber v. May, 2008 WL 2357275, at *4 (M.D. Pa. June 5, 2008).  However, "that is not enough" to defeat a claim of qualified immunity because "'the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Saucier, 533 U.S. at 202 (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

In this case, defendants searched plaintiffs' home pursuant to a search warrant that was authorized by a judicial officer.  "Under such circumstances, only when the warrant application is

'so lacking in indicia of probable cause as to render official belief in its existence unreasonable' will the officer lose the shield of qualified immunity." Campbell-Bieber, 2008 WL 2357275, at *4 (quoting Orsatti v. New Jersey State Police, 71 F.3d 480, 483 (3d Cir. 1995) (quoting Malley, 475 U.S. at 341)); see also Mills v. City of Barbourville, 389 F.3d 568, 577 (6th Cir. 2004). The Court "must inquire as to 'whether a reasonable well-trained officer would have known that his affidavit failed to establish probable cause and that he therefore should not have applied for the warrant under the conditions.'" Campbell-Bieber, 2008 WL 2357275, at *4 (quoting Orsatti, 71 F.3d at 483 (quoting Malley, 475 U.S. at 345)). This standard is analogous to the good faith standard used in the context of suppression hearings under United States v. Leon, 468 U.S. 897 (1984). Orsatti, 71 F.3d at 483 (citing Malley, 475 U.S. at 344).

The affidavit in this case was not "so lacking in indicia of probable cause as to render official belief in its existence unreasonable." Orsatti, 71 F.3d at 483 (quoting Malley, 475 U.S. at 341). As the Third Circuit explained in United States v. Sarraga-Solana, "[w]e have identified very few situations in which an affidavit is 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.' These include affidavits based on conclusory assertions, a single piece of outdated evidence, or an uncorroborated or unreliable anonymous tip." 263 Fed. App'x 227 (3d Cir. 2008) (citing United States v. Ritter, 416 F.3d 256, 263 (3d Cir. 2005); United States v. Zimmerman, 277 F.3d 426, 437 (3d Cir. 2002); United States v. Williams, 3 F.3d 69, 74 (3d Cir. 1993)).

The affidavit in this case was based on the experience and first-hand observations of law enforcement agents who witnessed plaintiffs' son, Nathan, engage in drug trafficking activity in a vehicle registered to him at plaintiffs' address, observed the same vehicle parked outside

plaintiffs' home late at night, and verified that the vehicle was not at the residence the next day during the hours when Nathan Pitner was allegedly at work. (Aff. Probable Cause ¶¶ 5-7.) The affidavit recites these facts, and thus did not fail to establish some nexus between Nathan Pitner's drug trafficking activity and plaintiffs' residence. In such a situation, where the affidavit was not devoid of facts supporting a finding of probable cause, but rather included a number of facts which "presented the magistrate with the judgmental task of evaluating their cumulative significance and testing it against the legal standard of probable cause," the Third Circuit has stated that "we believe Leon teaches that officers are entitled to rely on the magistrate's finding of probable cause." Williams, 3 F.3d at 74; see also Hodge, 246 F.3d at 309. Thus, even assuming *arguendo* that the affidavit underlying the search warrant for plaintiffs' residence lacked a substantial basis for finding probable cause, it was not "so lacking in indicia of probable cause" that the defendant law enforcement officers are not entitled to qualified immunity. Orsatti, 71 F.3d at 483. The officers were not "plainly incompetent" or "knowingly violat[ing] the law" when they acted upon the warrant, and they are therefore entitled to qualified immunity. Malley, 475 U.S. at 341.

    B.    **Scope of the Search**

        1.    **Constitutional Violation**

"The Supreme Court has allowed officers to seize incriminating evidence in plain view during the course of a lawful search because such a seizure 'does not involve an intrusion on privacy. If the interest in privacy has been invaded, the violation must have occurred before the object came into plain view.'" United States v. Menon, 24 F.3d 550, 559 (3d Cir. 1994) (citing Horton v. California, 496 U.S. 128, 141 (1990)). As explained by the Third Circuit in Menon,

the Supreme Court set forth in Horton "three requirements for valid seizures of evidence in plain view." Menon, 24 F.3d at 558. "First, the officer must not have violated the Fourth Amendment in 'arriving at the place from which the evidence could be plainly viewed.' Second, the incriminating character of the evidence must be 'immediately apparent.' Third, the officer must have 'a lawful right of access to the object itself.'" Menon, 24 F.3d at 559 (citing Horton, 496 U.S. at 136).

Plaintiffs contend that defendants exceeded the scope of the warrant by searching for and seizing firearms and marijuana, items which were not listed in the warrant. (Pls.' Mot. for Summ. J. 36; Pls.' Reply to Defs.' Response to Pls.' Mot. for Summ. J. 6.) The warrant authorized the defendant officers to search plaintiffs' entire residence for, *inter alia*, documents related to the distribution of marijuana and United States currency. (Aff. Probable Cause 1-2.) In searching for these items, the officers searched throughout the house, including under beds, in closets, and in cabinets and drawers. (Receipt / Inventory of Seized Property, in Ex. 2 to Pls.' Mot. for Summ. J.) In completing the search, the officers found firearms and marijuana. (Id.) Plaintiffs also challenge the seizure of U.S. currency. (Pls.' Mot. for Summ. J. 36.) However, U.S. currency was listed in the affidavit as an item to be searched for and seized, and thus the officers' search for and seizure of currency was within the scope of the warrant.

The Court concludes that the search warrant was valid, the officers were legally in plaintiffs' residence, and the officers had a right under the warrant to search the locations within the house that they searched. As stated by the Third Circuit in Menon, "we hold that a government agent has discovered evidence within the scope of the search allowed by the warrant if the agent's search fits within the literal terms of the warrant and is a reasonable means of

obtaining the objects described in the warrant." 24 F.3d at 560. Because searching under beds, in closets, and in cabinets and drawers was a "reasonable means" of obtaining the documents and currency "described in the warrant," the officers could legally search these locations. Menon, 24 F.3d at 560. The incriminating character of the marijuana, an illegal controlled substance, found in numerous locations in the house, was without question "immediately apparent" to the officers upon seeing it. The incriminating character of the firearms was also "immediately apparent" to the officers because Nathan Pitner was on state parole and thus was not permitted to be in possession of firearms. (Dep. of Def. Murrin 44-45.) Thus, the seizure of guns and marijuana in plain view discovered while the defendant officers were conducting a lawful search of plaintiff's residence was valid. Menon, 24 F.3d at 559; see also United States v. Smith, 62 Fed. App'x 419, 422 (3d Cir. 2003).

One trash bagful of marijuana was discovered by defendant Murrin in the basement of plaintiffs' residence not because the marijuana was in plain view, but because he immediately recognized the smell emanating from the bag as that of marijuana. (Dep. of Def. Murrin 26, 57-58.) While neither the United States Supreme Court nor the Third Circuit has "put its imprimatur" on the "plain smell" doctrine, United States v. Yamba, 506 F.3d 251, 257 (3d Cir. 2007), other courts in this and other circuits have adopted this doctrine as "a logical extension of, and analogous to, the plain view doctrine." United States v. Hutchinson, 471 F. Supp. 2d 497, 509 (M.D. Pa. 2007); see also United States v. Angelos, 433 F.3d 738, 748 (10th Cir. 2006); Horton v. Goose Creek Independent School Dist., 690 F.2d 470, 477 (5th Cir. 1982). The Court agrees that the "plain smell" doctrine is a "logical extension of . . . the plain view doctrine." Hutchinson, 471 F. Supp. 2d at 509. Thus, the seizure of the bag of marijuana from the basement was also valid under Horton and Menon.

### 2. Objective Reasonableness

As stated above, it is beyond dispute that there is a clearly established right to be free from unreasonable searches and seizures under the Fourth Amendment. Campbell-Bieber v. May, 2008 WL 2357275, at *4 (M.D. Pa. June 5, 2008). However, "that is not enough" to defeat a claim of qualified immunity because "'the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Saucier, 533 U.S. at 202 (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

Even assuming *arguendo* that there was not a substantial basis for the magistrate's finding of probable cause, thus rendering the warrant invalid, which in turn would mean that the defendant officers violated the Fourth Amendment and the first prong of the Horton test in seizing the marijuana and firearms, the defendant officers would still be entitled to qualified immunity on this claim. As explained above, the warrant upon which the officers relied in conducting the search was facially valid and not "so lacking in indicia of probable cause as to render official belief in its existence unreasonable." Orsatti, 71 F.3d at 483. Thus, it was objectively reasonable for the officers to believe that they were acting lawfully in searching the residence and in seizing the marijuana and firearms that they discovered in the course of the search.

### V. CONCLUSION

For the foregoing reasons, the Court concludes that defendants are entitled to qualified immunity from suit. Thus, the Court denies Plaintiffs' Motion for Summary Judgment, grants defendants' Motion for Summary Judgment, and enters judgment in favor of defendants, Sean

Murrin, Christopher McEvoy, William Cahill, and James D. Shaw, and against plaintiffs, Gizella H. Pitner and Stanley R. Pitner.


**BY THE COURT:**


**/s/ Honorable Jan E. DuBois**
**JAN E. DUBOIS, J.**